IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01172-RBJ

ROOF AMERICA CORPORATION,
a Nevada corporation and registered in Colorado as a foreign corporation,

Plaintiff,

v.

JOSEPH MORALES, individually and in his official capacity as Chief Deputy District Attorney of The City and County of Denver, Colorado, and
MITCHELL R. MORRISSEY, as the District Attorney of The City and County of Denver, Colorado,

Defendants.

---

ORDER

---

This matter comes before the Court on Defendants' Motion to Dismiss [ECF No. 7]. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the motion is granted.

## BACKGROUND

This case stems out of a criminal charge brought against the former Director of Operations for Roof America Corporation ("Roof America"), the plaintiff. Roof America alleges violations of its Fourteenth Amendment procedural due process rights, claiming economic injuries resulting from the shutting down of its business at the beginning of the busy season for roofing contractors. Though it originally brought claims against both Joseph Morales and Mitchell Morrissey, the plaintiff has voluntarily dropped all claims against Mr. Morrissey. *See*

[ECF No. 19 at 15]. As such, the Court will focus solely on the allegations made against Mr. Morales.

For purposes of this motion, the Court accepts as true all well-pleaded allegations in the Complaint. Roof America was formed as a roofing contractor company on October 21, 2011. At that time, its Director of Operations was Adelbert Bassford, going by the pseudonym Jack Bass. Roof America's business model consisted of charging roofing companies a $10,000 fee in exchange for a guarantee of fifty roofing jobs during the next roofing season, which begins in May or June in Colorado. Roof America would also be entitled to half of the profits generated from each of the jobs it arranged. Twenty roofing companies paid a total of $200,000 to join the Roof America Certified Contractor Network. According to the plaintiff, the unconstitutional actions of Mr. Morales rendered it unable to fulfill its obligations to its contractor partners, thereby causing it substantial economic injury.

According to the Complaint, Mr. Morales is the Chief Deputy District Attorney for the Economic Crimes Unit, Second Judicial District Attorney's Office. On May 3, 2013 Mr. Morales had Mr. Bassford arrested for attempting to influence a public servant and for criminal impersonation. The next day Mr. Morales emailed the Communications Director of the Denver District Attorney's Office, Lynn Kimbrough, the following:

> Lynn – on Monday we need to do a press release on our old pal Bert Bassford. We had him arrested on Friday (will get a warrant) for running a new scam under an alias Jack Bass. As you may know he was on ECU probation and was prohibited from running any new businesses. After a lot of digging around, and his former employees and victims finding out who he truly is and his past, we confirmed he is up to his old habits. His newest venture was a company called Roo[f] America and we believe there are more victims out there.

Complaint [ECF No. 1] ¶ 15.

On Monday May 6, 2013 Ms. Kimbrough issued a press release entitled "Convicted Scammer Arrested in New Scheme." The press release reads in full:

> A man convicted of scamming investors out of more than $1-million dollars several years ago has been arrested as part of an investigation into allegations he is running a new scam. The allegation is that he has been using an assumed name, Jack Bass, and running a company called Roof America, to prey on new victims. Roof America was being run out of Lakewood as a construction company that was supposed to prescreen contractors for customers.
>
> **Adelbert Bassford** (dob: 11-05-54) was arrested on Friday, May 3, 2013 for investigation of these allegations, and remains in custody.
>
> Bassford was indicted by a Denver Grand Jury just more than a decade ago, and was later convicted of violating the Colorado Organized Crime Control Act – COCCA, multiple counts of securities fraud, theft and defrauding a secured creditor. He was sentenced to 22 years in prison but that sentence was suspended on the condition he successfully complete 12 years of probation that specifically prohibited him from running any new business.
>
> Bassford, AKA Jack Bass, is being held without bond in connection with violating the terms of his probation. Formal charges are expected to be filed later this week or next, and investigators believe there may be additional victims.

Denver DA News Release [ECF No. 7-2].[1] According to the plaintiff, press outlets including Fox 31 and CBS 4 ran a story on their websites relying on the press release, and the Better Business Bureau added an alert notifying the public that there was a "government action" regarding Roof America. Complaint [ECF No. 1] ¶ 16.

That same day, Roof America's Vice President for Operations James Mosel called Mr. Morales and left him a voicemail. The Complaint is silent as to the content of the message. The

---

[1] The plaintiff refers to this press release in its Complaint and characterizes its contents (without quoting from it) in support of its claims. Complaint [ECF No. 1] ¶ 16. "[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The plaintiff objects to the Court's consideration of the document, but does not dispute its authenticity. The plaintiff's objection is therefore overruled.

next day Mr. Morales, along with investigator Brad Uyemura, called back Mr. Mosel. During the call, Mr. Morales allegedly told Mr. Mosel

> that he would put Mr. Bassford away for the rest of his life; that Mr. Bassford was engaging in fraud; that Mr. Bassford was a 'scumbag'; that Roof America will be shut down; that Mr. Mosel should tell all the Roof America employees to leave the building and get a new job; that Mr. Mosel should leave everything in the building; that Mr. Mosel should not allow potential customers, who were scheduled for appointments, to enter the building; that Mr. Mosel should lock the doors to the business and not let anyone else in.

*Id.* ¶ 18. Mr. Morales then told Mr. Mosel to meet him at the Roof America office later that day "because it would be a lot easier if Mr. Mosel opened the doors for Mr. Morales and Mr. Uyemura, rather than break the door down or changing the locks." *Id.* ¶ 19. Mr. Morales also told Mr. Mosel that he would come to the Roof America offices later that day with a document that would permit him to enter the premises, though he never did. *Id.* ¶¶ 19, 22.

Roof America contends that "Mr. Mosel complied with the Chief Deputy District Attorney's demands, expecting Morales to call back [and] arrive at the office later that day," but that Mr. Morales never called back. *Id.* ¶ 20. The next day, on May 8, 2013, Mr. Mosel returned to the office to get a power cord for his computer. While at the office he allegedly received a call from Mr. Uyemura asking him why he was in the office. However, there have been no allegations made that he was ordered to leave the premises.

On May 13, 2013 charges were filed against Mr. Bassford.[2] [ECF No. 7-4].[3] No criminal action was ever pursued against Roof America. The Complaint further alleges that no charges were filed against its officers or directors even though the Complaint admits that Mr. Bassford was the Director of Operations at the time of his arrest. Furthermore, the Court takes

[2] The Complaint mistakenly alleges that charges were filed on May 9, 2013. [ECF No. 1 ¶ 22].

[3] Facts subject to judicial notice, such as facts which are a matter of public record, may be considered in a motion to dismiss without converting the motion into one for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

judicial notice of the company's articles of incorporation, which list Jack Diamond as the President, Secretary, Treasurer, and President of Roof America from October 2011 until October 2013. [ECF No. 7-1 at 4–5]. According to the defendant, Jack Diamond is another pseudonym believed to have been used by Mr. Bassford.

The plaintiff contends that due to the publicity generated by Mr. Morales and the Denver District Attorney's Office, as well as the loss of employees, certified contractors, and customer affiliates caused by Mr. Morales' efforts to shut down the business, it was not possible to reopen Roof America. Roof America brings one claim against Mr. Morales in his individual capacity, a 42 U.S.C. § 1983 claim alleging a violation of Roof America's Fourteenth Amendment procedural due process rights.[4] Roof America seeks relief in the form of compensatory damages, punitive damages, costs, expert witness fees, reasonable attorney's fees, and any other relief that the Court deems just and proper. The defendant moves to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that Mr. Morales in his individual capacity is protected by absolute prosecutorial immunity, or in the alternative by qualified immunity, and that the plaintiff failed to state a plausible claim of property deprivation. In the alternative, the defendant seeks a stay of the action pending a determination of the criminal charges against Mr. Bassford.

## STANDARD OF REVIEW

Rule 12(b)(1) concerns whether the Court has jurisdiction to hear the case before it. "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "Jurisdiction is a threshold question that a federal court must address before reaching the merits of a statutory

[4] Though the case caption states that claims are brought against Mr. Morales in his individual and official capacity, no claim has been brought against Mr. Morales in his official capacity.

question, even if the merits question is more easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied." *Id.* "[S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya*, 296 F.3d at 955 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the Court at any point in the proceeding. Fed. R. Civ. P. 12(h)(3); *Harris v. Illinois-California Exp., Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982).

In reviewing a 12(b)(6) motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory need not be assumed to be true. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

**ANALYSIS**

To plead a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or its laws. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "A

defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation." *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006) (alterations and citation omitted).

The Due Process Clause of the Fourteenth Amendment protects against state deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. To assert a due process violation, a plaintiff must show that he possessed a protected interest under the Due Process Clause, and that he was not afforded an appropriate level of process before being deprived of that interest. *See Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994). The contours of property interests are not found within the Constitution; instead, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

**A. <u>Absolute Immunity</u>.**

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). This immunity applies equally in Section 1983 actions. *See Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Id.* (quoting *Hampton v. City of Chicago, Cook Cnty., Ill.*, 484 F.2d

602, 608 (7th Cir. 1973)). For example, if a prosecutor plans and executes a raid on suspicion of ongoing criminal activity, "he 'has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.'" *Id.* at 274 (quoting *Hampton*, 484 F.2d at 608–09).

Drawing a distinction between actions which are primarily investigative or administrative in nature and actions which are taken in connection with the judicial process can be difficult; "there is no bright line between advocacy and investigation." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007). However, "the determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role." *Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir. 1985). "Thus, the more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991). "In sum, a prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case. Absolute immunity, however, does not extend to those actions that are investigative or administrative in nature . . . ." *Mink*, 482 F.2d at 1261–62.

Mr. Morales argues that he is entitled to prosecutorial immunity because the plaintiff's due process claim is premised on actions Mr. Morales took after Mr. Bassford had already been arrested. According to Mr. Morales, shutting down Roof America's operations following Mr. Bassford's arrest would be consistent with the preservation of evidence for trial such that his actions were that of an advocate preparing for trial. The Court is not persuaded. First and foremost, the Complaint never alleges that Mr. Morales actually shut down Roof America; in fact, this is a large component of Mr. Morales' qualified immunity defense. Yet even if it did,

the plaintiff contends that Mr. Morales never appeared at the office to search or seize any evidence held by Roof America. Therefore, any claim that Mr. Morales shut down the business for purposes of gathering evidence for trial fails on the face of the Complaint.

Based on the Court's reading of the Complaint, Mr. Morales prompted Mr. Mosel to shut down the business, though without specifically ordering him to do so. In this Court's view, those actions are far more akin to investigative functions normally performed by a detective or police officer than to the advocacy of a judicial officer. And it is neither appropriate nor justifiable that absolute immunity should protect Mr. Morales where it would not protect a police officer or detective who performs the same actions.

**B. <u>Qualified Immunity</u>.**

In the alternative, Mr. Morales argues that he is entitled to qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects state actors from liability as well as suit but only if their conduct does not violate clearly established constitutional rights of which a reasonable person should have known. *Id.* at 231–32. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 244 (internal quotation marks and citation omitted). Overall, qualified immunity "operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must establish

that (1) the defendant's actions violated a constitutional right, and (2) the constitutional right was clearly established. *See e.g.*, *id.*; *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The Court has discretion in deciding which of the two prongs should be analyzed first. *Martinez*, 563 F.3d at 1088. And "[e]ven though the plaintiff bears the burden of making this two-part showing, we construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (internal quotation marks, alterations, and citations omitted).

The Court begins with the first prong. Roof America maintains that two actions taken under the color of state law unconstitutionally deprived it of its property rights: the publication of the press release and the alleged statements of Mr. Morales made during the phone call with Mr. Mosel. Beginning with the press release, the plaintiff contends that because the publication damaged its reputation, which caused it to lose business, the press release deprived Roof America of its constitutionally-protected property rights. Yet the plaintiff does not allege that the statements contained in the press release were false. Its publication is therefore not actionable. *See Workman v. Jordan*, 32 F.3d 475, 480–81 (10th Cir. 1994) (explaining that while an individual has a liberty interest in his good name and reputation – which can translate into a property interest in continued employment – damaging statements must be false in order to be actionable). Moreover, the plaintiff cites no authority for the implied proposition that it has a property interest in its reputation that could trigger a due process claim. *See Paul v. Davis*, 424 U.S. 693, 712 (1976); *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010) (holding that injuries resulting from market reactions to a public administrative order were insufficient to merit constitutional protection because "stigma alone is insufficient to invoke due process protections"). Though the press release may have damaged Roof America's reputation, the

plaintiff has not alleged a due process claim arising from the press release upon which relief could be granted.

With respect to the one phone call between Mr. Mosel and Mr. Morales, the facts alleged do not plausibly state a claim that the plaintiff suffered a deprivation of its property pursuant to state action. Plaintiff's counsel mischaracterizes the allegations from the Complaint in its Response brief, describing Mr. Morales as having **ordered** that Roof America cease business operations and as having **prevented** it from reopening. *See* [ECF No. 19 at 10]. At most, the Complaint alleges that Mr. Morales told Mr. Mosel that Roof America *would* be shut down, that Mr. Mosel *should* tell all Roof America employees to leave and get a new job, that Mr. Mosel *should not* allow potential customers to enter the building, and that Mr. Mosel *should* lock the doors to the business and not let anyone in. Complaint [ECF No. 1] ¶ 18. The plaintiff does not allege that Mr. Morales ever **ordered** Mr. Mosel to shut down Roof America, to fire its employees, or to cancel all business meetings, even those that could have taken place out of the office. Nor does the plaintiff allege that Mr. Mosel perceived Mr. Morales' statements as mandatory directives or veiled threats. In fact, the plaintiff admits that Mr. Morales said he would be arriving at Roof America's offices later that day with a search warrant, but that he never showed up and never again called Mr. Mosel. And yet the plaintiff fails to explain why it kept its doors shut. More particularly, the plaintiff fails to explain how it felt compelled through state action to keep its doors shut. In all, the Court finds that the plaintiff fails to make out a plausible claim of *deprivation* at the hands of a state actor, whether constitutional or not.

The Court finds that the plaintiff has failed to allege a plausible claim that it suffered an unconstitutional deprivation of its procedural due process rights. Because Roof America has not

established that the defendant's actions violated a constitutional right, the Court need not continue its qualified immunity analysis.

**ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss [ECF No. 7] is GRANTED. Final judgment will enter in favor of the defendant dismissing the case and all claims therein. Defendant is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 20th day of January, 2015.

BY THE COURT:

R. Brooke Jackson
United States District Judge